### Aaron Hunt *vs.* Lowell Gas Light Company.
### Edwin R. Hunt *vs.* Same.
### Isaac Annis *vs.* Same.

The return of an officer, that he has served upon an adverse party a notice of the time and place appointed for taking a deposition, on the day before the time named therein, without stating the hour when the service was made, does not show that the notice was duly served; and an objection to the insufficiency of the notice is not waived, although the party notified attended the taking of the deposition, and, after making a written protest for the purpose of saving his rights, cross-examined the deponent.

In an action against a gas light company to recover damages for an injury to the plaintiff's health, caused by an accidental escape of gas, at a point several hundred feet distant from his house, from a main pipe in a public street, from which it passed through a public sewer and a private drain, under another street through which gas pipes were not laid, into the plaintiff's cellar, if it appears that there was at the outset no want of care on the part of the defendants in laying their pipe, and that they had no knowledge that the

Hunt & others *v.* Lowell Gas Light Company.

gas which was escaping had made its way to the plaintiff's house, and by the use of due care could not ascertain the fact, and that, as soon as they knew of the leak, they used reasonable means to ascertain where it was, and to stop it, the plaintiff cannot recover for damages sustained by him after the time when, in the exercise of due care on his part, he might have given notice to the defendants of the presence of the gas in his house, or procured another place of residence.

In such action, evidence that the plaintiff and other members of his family who occupied the same house had been in good health before the time complained of, and that afterwards they all became ill, and that one of his daughters died, is competent: but evidence in defence that the illness of the plaintiff and his family was typhoid fever; that prio occupants of the same house had been much afflicted with illness of the same class; that many families had removed from it on that account; that its location was low, and upon made land, and that it was generally regarded and reputed to be unhealthy, s incompetent.

THREE actions of tort for injury to the health of the several plaintiffs, occasioned by the flow and escape of gas from a main pipe of the defendants, laid down in Middlesex Street in Lowell, through a sewer and drain into a tenement occupied by the plaintiffs. The cases were tried together in this court, before *Merrick, J.*

At the trial it appeared that the plaintiff, Aaron Hunt, occupied as a tenant at will one of a block of wooden tenements on Jackson Street in Lowell, which leads from Middlesex Street, and that the other plaintiffs, Edwin R. Hunt, his son, and Annis, a boarder, lived with him ; that the defendants had a main pipe laid in Middlesex Street, for the purpose of distributing illuminating gas throughout the city, in accordance with the provisions of their charter ; that, at the time complained of, there were two large sewers in the same street, which were built by the city, with loose stones ; and that there was a private drain, covered with uncemented flat stones, and built after the defendants had laid their gas pipe, leading from Aaron Hunt's cellar to one of these sewers, and a sink spout leading from the kitchen into the drain in the cellar. It was contended by the plaintiffs that the gas escaped from the main pipe in Middlesex Street into one of the large sewers, and thence passed through the drain and up the sink spout into the kitchen. There were no gas pipes in the tenement. There was evidence that the smell of gas was first discovered in the kitchen on the evening of January 27 1857, and that it came from the drain in the cellar in the

way described ; that the smell spread through the whole house, and that the family slept with the windows open ; that Aaron Hunt afterwards sprinkled choride of lime about the house, but did nothing more, except to keep the windows and doors open ; that the smell of gas began to diminish in ten or twelve days, but did not wholly disappear for several weeks ; that Aaron Hunt was taken ill about one week after the first discovery of gas in the house, and that Edwin R. Hunt and Annis became ill about the 13th of February. The plaintiffs were allowed to introduce evidence, under objection, that before the influx of the gas they and the other members of the family were in good health, and that afterwards they all became ill, and a daughter of Aaron Hunt died. The plaintiffs were also allowed to introduce in evidence the deposition of William Bass, a physician, which was objected to by the defendants, on the ground that sufficient notice had not been given to them of the time and place of taking it. The notice appeared, by the return of the officer, to have been given on the 26th of March, the hour of service not being stated ; and the time of taking the deposition was fixed at two o'clock in the afternoon of the next day. The defendants appeared and cross-examined the witness, but made objection to proceeding under the notice, and stated in writing that they did not intend to waive any objection to the notice on account of its insufficiency.

It further appeared in the case that neither the plaintiffs, nor any one in their behalf, ever notified the defendants that there was gas in the house ; and the defendants introduced evidence to show that they were wholly ignorant that there was any gas there, or that any members of the family were ill. They also introduced evidence tending to show that, as soon as they had knowledge of a leak in their main pipe, they immediately commenced examining for it, and used all reasonable means in their power to ascertain where it was ; that the street was paved with stone, and was deeply frozen, so that they were obliged to build fires upon the surface to thaw the paving stones from the ground ; that after several days' labor they discovered the leak, at a point more than three hundred feet from the house, and immediately

stopped it; that their pipe was of a suitable and proper kind, and properly laid; that leaks in gas pipes are sometimes caused by the effects of heat and cold, and in other ways, and that it is not practicable to make them so that they will always continue tight; that the smell of gas will not pass through frozen ground, and it is very difficult to find a leak in winter, as it can be traced only by the smell, and will pass along under frozen ground until it can find an outlet; that the sink spout and drain in the house occupied by the plaintiffs were not closed up; that in other tenements, where the defendants had been informed of the smell of gas, they had advised and taken precautions to prevent annoyance from it, and that in some cases the closing of the spout had been sufficient for this purpose.

The defendants also offered evidence to show that the sickness of the plaintiffs was typhoid fever; that prior occupants of the house in question had been afflicted with much illness of that class; that many families had removed from it on that account; that its location was low and upon made land; and that it was generally regarded and reported to be unhealthy: but the evidence was excluded.

The defendants contended that they were not liable even if the illness of the plaintiffs was caused by the escape of gas into the house from the sewer and drain, which were not under the control of the defendants, but of the plaintiffs; and because they had no knowledge that the plaintiffs were suffering from the effects of gas, or that there was gas in their house.

The presiding judge instructed the jury, amongst other things not excepted to, that, there being no evidence of defective construction of the defendants' pipes, they must use due diligence in stopping the leak which accidentally occurred, or in preventing the flow of gas into the plaintiffs' house; that, if they knew that gas was escaping in that neighborhood, they were bound to take care, by the use of due diligence in making repairs, that it should not get into the plaintiffs' house; that the plaintiffs were not obliged to give notice to the defendants that the gas was escaping into their house, and the want of such notice was not evidence of a want of due care on their part, but that the ques-

tion of due care was to be determined by the jury upon all the evidence in the case; and that the plaintiffs, in order to exercise due care on their part, were not obliged to leave their house, although they knew that the gas of the defendants, being a noxious substance, was escaping into it and injuring their health; but of this the jury were to judge upon all the evidence in the case.

The jury returned a verdict for each of the plaintiffs, and the defendants alleged exceptions.

*B. F. Butler & W. P. Webster,* for the defendants.

*D. S. Richardson & A. R. Brown,* for the plaintiffs.

BIGELOW, C. J.    The principles of law applicable to a case like the present have been carefully considered and fully stated in a recent decision of this court, *Holly* v. *Boston Gas Light Co.* 8 Gray, 123.    It will be sufficient, therefore, to state briefly our conclusions on the various points raised by the exceptions in the case at bar.

1. First in order is the objection to the admission of the deposition of the witness Bass, on the ground that sufficient notice of the time and place of taking it was not given to the defendants.    The general rule of law is, that every witness must give his evidence in person before the court and jury, so that they may be able to judge of his credibility by his appearance and manner of testifying.    There are exceptions to this rule founded on considerations of convenience and necessity.    But, if a party desires to avail himself of the testimony of an absent witness, the burden is upon him to make it appear that he has brought his case within some of these exceptions, so as to render the written evidence of the witness competent.    This can be done only by showing that the provisions of law regulating the mode of taking depositions have been substantially complied with, because upon them depend the jurisdiction and authority of the magistrate by whom the evidence of the witness is reduced to writing and certified to the court.    If any essential requisite is omitted, the deposition, however full and accurate it may be in other respects, cannot be regarded as legal evidence.    In the present case, it does not appear that the defendants had the twenty four

hours' notice of the time of taking the deposition which is to be allowed in all cases under Rev. Sts. *c.* 94, § 18; Gen. Sts. *c.* 131, § 21. This is an important omission, which renders the deposition inadmissible. The intent of the statute was, that a party should not be suddenly called upon at the pleasure of his adversary to attend to the taking of material testimony, without having some time for preparation and to procure the attendance of counsel. It is therefore no answer to this objection that the defendants attended the taking of the deposition and put cross interrogatories to the witness. This was done under a protest, and with an express reservation of their right to object to the use of the deposition at the trial. They had a right to the full notice required by law; the plaintiffs could not deprive them of this right; nor were they obliged to forbear attending the taking of the deposition or to forego the cross-examination of the witness. It was impossible for them to say with certainty that the deposition would not be admitted at the trial of the case, notwithstanding the omission to give the proper notice. They therefore had a right to appear *de bene esse,* not waiving any objection to the competency of the deposition when it should be offered in proof.

2. The next objection is that the jury were instructed that the plaintiffs were not bound to give notice to the defendants that the gas was escaping into their house, and that the omission of such notice was not evidence of any want of due care on the part of the plaintiffs. In a certain sense and to a qualified extent this instruction was correct. If the defendants were guilty of negligence in omitting to stop the leak in their pipe, by which injury was occasioned to the plaintiffs, they are entitled to recover the damages suffered by them, so long as they were guilty of no want of due care. But in all cases where negligence is the gist of an action, the party claiming damages is bound to show that he has not failed in the performance of his duty in relation to the subject matter out of which the suit has arisen. The assertion of a right involves the necessity of showing the performance of a corresponding duty. It seems to us that the instructions given to the jury omitted to make a

proper application of this familiar principle to the facts in proof, and that in this respect they were inaccurate and deficient. It appeared that the house occupied by the plaintiffs was situated several hundred feet from the place where the leak in the pipe occurred, and on a street through which the gas was not conducted; that there was no direct communication between the pipe through which the gas flowed and the plaintiffs' house, bu that it escaped through a private drain into the plaintiffs' cellar, and that the defendants had no knowledge or information which led them to suppose that the gas had made its way into the house occupied by the plaintiffs. Under these circumstances, if the defendants did not know that the leak in their pipe caused the gas to escape into the plaintiffs' house, and by the use of reasonable care and after due inquiry could not ascertain the fact, the plaintiffs had no right to remain passive and permit the nuisance to exist for ten or twelve days to their injury, and claim damages of the defendants therefor during the whole time. Due diligence required some action on their part. It was their duty to use reasonable efforts to avoid or prevent the danger, or to give the defendants notice of the injury to which they were subjected, and afford them opportunity to remedy the difficulty. It was this aspect of the case which the instructions given to the jury failed to meet. They should have been told that, if the defendants did not know, and by the use of due care could not ascertain, that the gas was escaping into the plaintiffs' house, they would not be liable for damages sustained after the time when the plaintiffs, in the exercise of due care, could have given notice thereof to the defendants, and they had thereby opportunity given them to prevent the further continuance of the nuisance on the plaintiffs' premises. *Peyton* v. *Mayor & Commonalty of London*, 9 B. & C. 725. 2 Greenl. Ev. § 473.

3. For the same reasons we are of opinion that the instructions were defective in omitting to give more full and precise directions as to the duty of the plaintiffs to leave the premises in order to avoid the evil effects of the noxious substances with which they were filled. It was clearly a want of due care to remain in the house after the plaintiffs had a reasonable oppor-

tunity to procure another house or place of residence, and to remove thither, and the defendants could not properly be held liable in damages for consequences which ensued after such removal might have been made. This precise point was decided in *Holly* v. *Boston Gas Light Co. ubi supra.*

The other rulings, to which exceptions were taken at the trial, seem to us to have been correct; but as the objections which are well founded go to the merits of the case, it is necessary to order a new trial.                    *Exceptions sustained.*